UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 26-01757-KK-DMKx** | Date: | April 14, 2026 |
|---|---|---|---|

| Title: | ***Xiaofei Wang v. Markwayne Mullin et al.*** |
|---|---|

Present: The Honorable    KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (In Chambers) Order GRANTING Petitioner's Motion for Preliminary Injunction [Dkt. 3]**

**I.
INTRODUCTION**

On April 10, 2026, petitioner Xiaofei Wang ("Petitioner"), who is currently detained in the custody of Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus ("Petition") against respondents Markwayne Mullin, Todd Blanche, Todd M. Lyons, Ernesto Santacruz, Jr., and Patricia M. Colbert (collectively, "Respondents").  ECF Docket No. ("Dkt.") 1, Petition ("Pet.").  On the same day, Petitioner filed an Ex Parte Application for Temporary Restraining Order ("Application"), Dkt. 3, which the Court converted to the instant Motion for Preliminary Injunction ("Motion"), Dkt. 7, Motion ("Mot.").

The Court finds this matter appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons set forth below, Petitioner's Motion is **GRANTED**.

///

///

///

///

## II.
## BACKGROUND

### A.    RELEVANT FACTS

Petitioner, a Chineze citizen, fled his home country to escape persecution for his political views.  Pet. ¶¶ 1, 30.  Petitioner arrived in the United States in September 2022.  Id. ¶ 30; Mot. ¶ 2.

Upon arrival, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear, "charging Petitioner as removable based on entry without admission or parole."  Pet. ¶ 31.  Petitioner was subsequently released on an order of release.[1]  Id. ¶¶ 31-33; Mot. ¶ 2.

In October 2022, Petitioner applied for political asylum in the United States.  Mot. ¶ 2; Pet. ¶ 32.  Petitioner's removal proceedings remain pending before an Immigration Judge.  Pet. ¶ 32.

For over three years, between October 2022 and March 2026, Petitioner complied with immigration reporting requirements, "including appearing for ICE check-ins as directed."  Id. ¶ 33.  Petitioner has no criminal history and no disciplinary record in immigration detention.  Id.

In March 2026, Petitioner was "abruptly arrested and detained [] without warning and without any individualized assessment of flight risk or dangerousness."  Mot. ¶ 2; Pet. ¶ 34.  Petitioner is currently detained at the Adelanto ICE Facility.  Pet. ¶ 10.

While detained, Petitioner "has experienced mental health symptoms including depression and anxiety."  Id. ¶ 37.  As a result of his detention, Petitioner has been separated from his physically frail and ill wife who depends on Petitioner "as the primary source of income."  Id.

### B.    PROCEDURAL HISTORY

On April 10, 2026, Petitioner filed the operative Petition against Respondents, alleging his re-detention violates the Due Process Clause of the Fifth Amendment ("Procedural Due Process Claim").  Id. ¶¶ 38-45.  Petitioner further alleges his detention violates Section 706 of the Administrative Procedure Act ("APA Claim").  Id. ¶¶ 54-62.

On the same day, Petitioner filed the Application, dkt. 3, and the Court converted the Application into the instant Motion.  Dkt. 7.  The Court set an expedited briefing schedule, ordering Respondents to file an opposition in "no later than three (3) days."  Id.

On April 13, 2026, Respondents filed an Opposition stating, "[Respondents] are not presenting an opposition argument at this time."  Dkt. 9.

This matter, thus, stands submitted.

---

[1] While not entirely clear, it appears Petitioner was released on "conditional parole" under 8 U.S.C. § 1226(a)(2)(B) or "for urgent humanitarian reasons or significant public benefit" pursuant to 8 U.S.C. § 1182(d)(5)(A) pending his removal proceedings.

### III.
### LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, the Court may grant a preliminary injunction to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest ("Winter factors"). See id. at 20. Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard, [] known as the 'sliding scale' variant of the Winter standard." Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified). Under the serious questions standard, the four Winter factors are "balanced, so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a preliminary injunction may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," and so long as the other Winter factors are also met. Id. at 1132.

### IV.
### THE WINTER FACTORS WEIGH IN FAVOR OF GRANTING THE PRELIMINARY INJUNCTION

### A.    THE LIKELIHOOD OF SUCCESS ON THE MERITS

The likelihood of success on the merits is the most important Winter factor, which "is especially true for constitutional claims." Junior Sports Mags. Inc. v. Bonta, 80 F.4th 1109, 1115 (9th Cir. 2023) (citing Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)). Here, Petitioner is likely to succeed on the merits of his claim that his detention violates the Due Process Clause.[2]

### 1.    Applicable Law

Under the Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693. As the Supreme Court recently reaffirmed, the Fifth Amendment "entitles [noncitizens] to due process of law in the context of removal proceedings." A.A.R.P. v. Trump, 605 U.S. 91, 94 (2025) (citation modified) (quoting Trump v. J.G.G., 604 U.S. 670, 673 (2025)).

"Due process is flexible and calls for such procedural protections as the particular situation demands." United States v. Rivera-Valdes, 157 F.4th 978, 991 (9th Cir. 2025) (citation modified)

---

[2] Because the Court finds Petitioner is entitled to the relief based on his Procedural Due Process Claim, the Court need not consider Petitioner's other claim.

(quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).  In general, due process "requires some kind of a hearing before the State deprives a person of liberty or property." Shinault v. Hawks, 782 F.3d 1053, 1058 (9th Cir. 2015) (citation modified) (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)).  To determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation," courts apply the three-part balancing test established in Mathews v. Eldridge, 424 U.S. 319 (1976).  Yagman v. Garcetti, 852 F.3d 859, 864 (9th Cir. 2017) (citation modified) (quoting Shinault, 782 F.3d at 1057).  Under the Mathews test, courts consider "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." Mathews, 424 U.S. at 321.

  2.  **Analysis**

  Here, the Court finds Petitioner is likely to succeed on the merits of his claim that Respondents violated the Due Process Clause by re-detaining him without a pre-deprivation hearing.

  First, Petitioner has a substantial private interest in remaining out of immigration custody. As a noncitizen residing within the United States, Petitioner is entitled to constitutional due process. See Sotomayor v. Bondi, No. EDCV 25-02939-CV-SSCx, 2025 WL 3691398, at *3 (C.D. Cal. Nov. 14, 2025) (noting noncitizens released on discretionary parole are entitled to due process).  Further, as noted, Petitioner was released shortly after entering the United States and being charged as removable.  This release gives rise to "the most elemental of liberty interests – the interest in being free from physical detention by one's own government." Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004); see also Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 932 (N.D. Cal. 2025) ("Being held in custody by the government at an earlier time does not eliminate one's liberty interest in remaining on release." (citing Morrissey, 408 U.S. at 482)); Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause.").

  While the Government's initial decision to release Petitioner was discretionary, see 8 U.S.C. § 1182(d)(5); id. § 1226(a)(2), that decision nonetheless contained an "implicit promise that parole will be revoked only if he fails to live up to the parole conditions," Morrissey, 408 U.S. at 482; see also Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody.").  For over forty-two months, Petitioner relied on this promise to live "with family and friends" and "form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482; see Mot. ¶ 12 (noting Petitioner cares for his ill wife who "has limited ability to work").  The length of Petitioner's release on parole further strengthens his private interest in his continued freedom from immigration detention.  See Doe, 787 F. Supp. 3d at 1093 (finding the Government's actions in conditionally allowing the petitioner to live outside immigration custody for five years created a protected liberty interest); Pinchi, 792 F. Supp. 3d at 1034 (finding the more than two years a petitioner lived outside of immigration custody "heightened" her liberty interest).  Therefore, Petitioner establishes a significant liberty interest in remaining out of immigration custody.

  Second, the risk of erroneous deprivation is significant because Petitioner has not been afforded an opportunity to contest his detention.  Mot. ¶ 15.  Civil immigration detention is

"nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community.  Zadvydas, 533 U.S. at 690; see also Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) ("'[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions.").  In releasing Petitioner on parole in 2022, DHS necessarily found Petitioner did not pose a significant flight risk or danger to the community.  See 8 C.F.R. § 212.5(b) (permitting parole only where the noncitizen "present[s] neither a security risk nor a risk of absconding"); id. § 1236.1(c)(8) (authorizing release where the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding").  Respondents fail to demonstrate anything has changed since Petitioner's release to suggest he no longer meets these criteria.  Indeed, the record suggests otherwise, as Petitioner has complied with all conditions of his parole – including attending regular check-ins with ICE.  Mot. ¶ 8.  Moreover, Petitioner has no "criminal arrest history, criminal convictions, or disciplinary record in immigration detention."  Id.  The uncontroverted evidence thus "raises an inference that the government will have difficulty proving by clear and convincing evidence that Petitioner's detention is necessary to prevent danger to the community or his flight."  Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025).

Given the risk of erroneous deprivation, a pre-detention hearing would afford Petitioner the opportunity to demonstrate he does not pose a danger to the community or flight risk.  In contrast, without the additional procedural safeguard of a pre-detention hearing, ICE could, as it appears to have done so here, unlawfully re-detain Petitioner at any time, regardless of whether his detention serves any valid governmental interest.  See Pinchi, 792 F. Supp. 3d at 1035 (finding the risk of erroneous deprivation was significant where neither party "had an opportunity to determine whether there is any valid basis for [the petitioner's] detention"); Fernandez v. Semaia, No. EDCV 25-03412-SPG-MBKx, 2026 WL 136229, at *6 (C.D. Cal. Jan. 13, 2026) (noting post-deprivation relief could result in the petitioner's indefinite detention "without any process").  Therefore, the risk of erroneous deprivation of Petitioner's liberty without a pre-deprivation hearing is high.

Third, Respondents have no countervailing interest in re-detaining Petitioner, and the burden of a pre-detention hearing is low.  As noted, Respondents have not shown Petitioner poses a flight risk or danger to the community, especially considering his compliance with the terms of his release.  In fact, Respondents do not even oppose the instant Motion.  See dkt 9.  Thus, Respondents lack any governmental interest in continuing to detain Petitioner.  See Pinchi, 792 F. Supp. 3d at 1036 (finding no valid governmental interest where the government identified no changed circumstances regarding the petitioner's dangerousness or flight risk).  Further, while Respondents would have expended resources in providing Petitioner with notice and a hearing before re-detaining him, "those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue."  E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).  Regardless, custody hearings in immigration court are "routine" and impose only a "minimal" cost.  Singh v. Bowen, No. EDCV 25-03034-CAS-PDx, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citation modified) (quoting Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025)).

In sum, Petitioner has demonstrated a strong likelihood of success on the merits of his claim that his re-detention violates his right to procedural due process.  Accordingly, the first Winter factor weighs in favor of Petitioner.

## B.    THE LIKELIHOOD OF IRREPARABLE HARM

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez, 872 F.3d at 994 (citation modified) (quoting Melendres, 695 F.3d at 1002).  "Deprivation of physical liberty by detention constitutes irreparable harm." Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) (citing Hernandez, 872 F.3d at 994).  Among other harms, immigration detention results in "subpar medical and psychiatric care" for detainees and imposes "economic burdens" and "collateral harms" on the families of detainees.  Hernandez, 872 F.3d at 995.  "In the absence of an injunction, harms such as these will continue to occur needlessly on a daily basis." Id.

Here, as stated above, Respondents have violated Petitioner's right to procedural due process by re-detaining him without notice or a pre-detention hearing.  While re-detained by ICE, Petitioner has experienced depression and anxiety, and has been unable to work to support his sick wife.  Mot. ¶ 12.  Petitioner's wife has been "unable to maintain basic living necessities or ensure her own safety without Petitioner's support." Id. ¶ 18; see, e.g., Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1037 (N.D. Cal. 2025) (finding irreparable harm where the petitioner would be "detained and [] not [] entitled to challenge his re-detention before a neutral adjudicator"); J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) (finding irreparable harm where the petitioner was "likely to succeed on the merits of his claim that his re-detention without a bond hearing violates the Due Process Clause").

Accordingly, the second Winter factor weighs in favor of Petitioner.

## C.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST

The final two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009).  The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (citation modified) (affirming the balance of hardships weighed in favor of plaintiffs alleging the government violated the INA).

Here, because Petitioner has demonstrated a likelihood of success on his Procedural Due Process Claim, the balance of equities and public interest "tip[] sharply" in his favor.  All. for the Wild Rockies, 632 F.3d at 1135.  In addition, Respondents' interest in enforcing immigration laws is not persuasive because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs., 594 U.S. 758, 766 (2021) (citing Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 582, 585-586 (1952)); see also Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs., 777 F. Supp. 3d 1039, 1045-46 (N.D. Cal. 2025), appeal dismissed, No. 25-2358, 2025 WL 1189827 (9th Cir. Apr. 18, 2025) ("[C]ourts regularly find that '[t]here is generally no public interest in the perpetuation of unlawful agency action.'" (quoting League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016))).

Accordingly, the third and fourth Winter factors weigh in favor of Petitioner.

\*    \*    \*

Thus, because all four <u>Winter</u> factors weigh in his favor, Petitioner is entitled to injunctive relief.  Petitioner's release is necessary to return him to the status quo, which is "the last uncontested status which preceded the pending controversy." <u>Flathead-Lolo-Bitterroot Citizen Task Force v. Montana</u>, 98 F.4th 1180, 1191 (9th Cir. 2024) (citation modified) (quoting <u>GoTo.com, Inc. v. Walt Disney Co.</u>, 202 F.3d 1199, 1210 (9th Cir. 2000)).  Here, the last uncontested status is Petitioner's release before his current re-detention.  <u>See</u> <u>J.A.E.M.</u>, 812 F. Supp. 3d at 1072 ("Petitioner's immediate release is required to return him to the status quo ante—'the last uncontested status which preceded the pending controversy.'" (quoting <u>Pinchi v. Noem</u>, No. 25-cv-05632-RMI (RFL), 2025 WL 1853763, at *3 (N.D. Cal. July 4, 2025))).  Accordingly, Petitioner's immediate release from ICE's custody is the appropriate form of relief.  <u>See</u> <u>Pablo Sequen v. Albarran</u>, 806 F. Supp. 3d 1069, 1089 (N.D. Cal. 2025) (enjoining petitioners' re-detention without a pre-deprivation hearing where a post-arrest bond hearing "would only be provided after they have been detained and thereby deprived of their liberty . . . without first providing an opportunity for them to demonstrate why their detention is unwarranted").

**V.**
**<u>CONCLUSION</u>**

For the reasons set forth above, the Court orders as follows:

1.  Petitioner's Motion is **GRANTED**;[3]
2.  Respondents are **ORDERED** to immediately release Petitioner from their custody under the same conditions as his most recent parole prior to his re-detention;
3.  Respondents are **ENJOINED** from re-detaining Petitioner without providing him a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required;
4.  Respondents are **ENJOINED** from relocating Petitioner outside the Central District of California pending final resolution of this case; and
5.  Respondents are **ORDERED** to file a status report no later than April 15, 2026, regarding their compliance with this Order.

///

///

---

[3] Federal Rule of Civil Procedure 65(c) permits a court to grant injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'"  <u>Johnson v. Couturier</u>, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis removed) (quoting <u>Jorgensen v. Cassiday</u>, 320 F.3d 906, 919 (9th Cir. 2003)).  Here, it is unlikely Respondent will incur any significant costs, and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." <u>Baca v. Moreno Valley Unified Sch. Dist.</u>, 936 F. Supp. 719, 738 (C.D. Cal. 1996).  Accordingly, the Court waives the bond requirement.

This Order shall remain in effect until further order by the Court.  Failure to comply with this Order will result in sanctions.  Pursuant to General Order No. 05-07, further proceedings on the merits of the Petition are referred to the Magistrate Judge.

**IT IS SO ORDERED**.